**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2252-24

JOSEPH J. TOMASELLI,

     Petitioner-Respondent,

v.

PETCO,

     Respondent-Appellant.

_____

Submitted December 3, 2025 – Decided March 3, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Division of Workers' Compensation, Department of Labor and Workforce Development, Claim Petition No. 2018-5487.

Marshall Dennehey, PC, attorneys for appellant (Rachel A. Ramsay-Lowe and Walter F. Kawalec, III, on the briefs).

Garces Grabler & Lebrocq, PC, attorneys for respondent (Ellen Radin, on the brief).

PER CURIAM

Petco Animal Supplies, Inc. (Petco) appeals from the Division of Workers' Compensation order finding it had waived its N.J.S.A. 34:15-40 (section 40) lien rights following Joseph J. Tomaselli's workplace injury and subsequent third-party settlements. On appeal, Petco argues neither it nor its third-party administrator, Sedgwick Claims Management Services, Inc. (Sedgwick), effected a clear and unambiguous waiver of section 40 rights. After careful review, we conclude Petco clearly and unequivocally conveyed its intent to accept $33,333.33 as full and final payment of any section 40 workers' compensation lien and affirm.

I.

Joseph J. Tomaselli was employed as a manager for Petco. On December 23, 2017, while collecting shopping carts in the store's parking lot, he was struck by a car that backed into his torso and pinned his left foot under the tire. He sustained injuries to his back, mid-stomach, and mid-hip, which required surgery.

Tomaselli filed a claim petition for workers' compensation benefits on February 28, 2018. Petco answered the claim petition, admitting employment and the occurrence of a compensable accident, and asserting its rights pursuant

2

to section 40 for a potential third-party lien. Sedgwick administered the claim on behalf of Petco.

While pursuing his workers' compensation claim, Tomaselli also pursued and obtained a third-party settlement of $85,000 in underinsured motorist (UIM) benefits and a $15,000 third-party settlement arising from the same incident. On June 28, 2021, Sedgwick sent a letter to Tomaselli stating, in pertinent part:

> As you are aware, Joseph Tomaselli /Petco Health and Wellness Company, Inc has presented a claim to us under the Workers' Compensation Act. In accordance with the act, we have the right to recover all Workers' Compensation benefits we have paid or may become liable for in the future with respect to Joseph Tomaselli []/Petco Health and Wellness Company, Inc injury. This right of reimbursement acts as a credit against any settlement or judgment you may receive from the wrongful party.
>
> Be advised that medical treatment is ongoing; however our interest as of today is $177,084.30. This represents $90,351.50 in medical benefits and $86,732.80 in indemnity benefits paid on behalf of the employer Petco Health and Wellness Company, Inc.
>
> We have agreed to accept $33,333.33 representing 1/3 of the $85,000.00 from the UIM settlement and $15,000.00 from the third-party settlement.

On August 19, 2021, Tomaselli's counsel forwarded to Sedgwick a check for $33,333.33, accompanied by a letter stating the check "represents[] full and final

3

payment of any outstanding worker's compensation lien, in connection with the above-referenced claim." Sedgwick accepted and cashed the check.

The worker's compensation claim then proceeded to trial in the Division of Workers' Compensation. On February 27, 2025, the judge of workers' compensation (JWC) rendered a written decision finding Tomaselli suffered a compensable injury that had exacerbated his pre-existing back injury, and Tomaselli's "disability is [fifty-five percent] of permanent partial total disability with [Petco] receiving credit of [twenty percent] permanent partial total disability." The JWC further concluded the $33,333.33 payment constituted full satisfaction of Petco's section 40 lien, and any future lien had been waived by agreement of the parties:

> There is an established practice in cases where a third-party case recovery is less than the total value of the workers' compensation benefits wherein the parties will agree to an equal division of the third-party recovery, referred to colloquially as "a third, a third and a third". Wherein, each interested party will receive an equal amount to reach an acceptable resolution.
>
> That seems to have been the intent of the parties in this matter. Sedgwick did not reserve any future rights in their correspondence, the petitioner's attorney's intent is clear from their letter that the payment was made in full and final settlement of the section 40 lien credits.
>
> The Court therefore finds that the parties intended the $33,333.33 payment to constitute the full satisfaction

4

of the section 40 lien applicable to the $100,000 recovery in this matter, therefore any future lien claimed by Petco or Sedgwick has been waive[d] per the agreement of the parties.

Petco filed a timely notice of appeal contesting the portion of the judgment finding waiver of its section 40 rights.

II.

"Our review of decisions from the workers' compensation court are decidedly deferential" in recognition of "the compensation court's expertise and the valuable opportunity it has had in hearing live testimony." Ripp v. County of Hudson, 472 N.J. Super. 600, 606 (App. Div. 2022) (quoting Hager v. M&K Constr., 246 N.J. 1, 18 (2021)). We are generally "limited to 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge their credibility." Keim v. Above All Termite & Pest Control, 256 N.J. 47, 55 (2023) (quoting Lapsley v. Twp. of Sparta, 249 N.J. 427, 434 (2022)). However, we review the court's conclusions of law, such as its construction of a contract or a statute, de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014); Hager, 246 N.J. at 18.

A-2252-24

The Worker's Compensation Act (the Act), N.J.S.A. 34:15-1 to -147, governs "the rights and duties of an employee and employer, as well as those of . . . a third-party tortfeasor," with regard to work-related injuries. Pool v. Morristown Mem'l Hosp., 400 N.J. Super. 572, 575 (App. Div. 2008) (quoting Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 183 (1986)). It seeks to "'mak[e] benefits readily and broadly available to injured workers through a non-complicated process,' [by] . . . encourag[ing] the employer to make prompt voluntary payments." Greene v. AIG Cas. Co., 433 N.J. Super. 59, 65-66 (App. Div. 2013) (quoting Tlumac v. High Bridge Stone, 187 N.J. 567, 573 (2006)).

The Legislature enacted section 40 of the Act to avoid an inequitable double-recovery by injured employees, by "creat[ing] a lien in favor of the employer [for worker's compensation benefits paid pursuant to the Act] that attaches to the employee's recovery against other tortfeasors." Pool, 400 N.J. Super. at 575. "As a result, although the legislative scheme permits an employee to pursue a claim for damages against an alleged tortfeasor, any recovery obtained, not in excess of the amount of the lien, is encumbered by the employer's statutory lien." Id. at 576 (citing Errickson v. Supermarkets Gen. Corp., 246 N.J. Super. 457, 463 (App. Div. 1991)).

The statute mandates the employer or their insurance carrier "shall be entitled to be reimbursed . . . for the medical expenses incurred and compensation payments . . . paid to the injured employee" if "the employee . . . recover[s] and [is] paid from the [third-party] . . . any sum in release or in judgment on account of [their] . . . liability to the injured employee . . . ." N.J.S.A. 34:15-40. By the plain meaning of the statute, the employer's right to reimbursement is conditioned on, and triggered by, the employee's recovery of any sum from a third-party tortfeasor.

The amount the employee is obligated to repay to the employer is determined by whether "the sum recovered by the employee" is "less than the liability of the employer . . . under this statute" or "equivalent to or greater than" that liability. N.J.S.A. 34:15-40(b) and (c).

There is no requirement the employer's lien must be paid following recovery from a third-party tortfeasor. Indeed, it cannot be fully satisfied until any associated worker's compensation action is finalized and the employer's liability under the Act is determined. Thus, an employer's unperfected statutory lien is not required to be satisfied immediately upon the injured employee's recovery from a third-party tortfeasor.

A-2252-24

Neither party disputes, absent the alleged settlement and waiver, Petco had the right, pursuant to section 40, to recover reimbursement of workers' compensation benefits to the extent of the full amount of the third-party recovery. The sole issue on appeal is whether Petco waived its section 40 lien by agreeing to accept a third of the third-party recovery.

"Waiver is the voluntary relinquishment of a known right evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based." Tremonte v. Jersey Plastic Molders, Inc., 190 N.J. Super. 597, 601 (App. Div. 1983) (quoting Mitchel v. Alfred Hoffman, Inc., 48 N.J. Super. 396, 405 (App. Div. 1958)). "[A]ny contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 443 (2014) (second alteration in original) (quoting Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003)). "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." Knorr v. Smeal, 178 N.J. 169, 177 (2003). "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. Indeed, "[t]he intent to waive need not be stated expressly, provided the circumstances

clearly show that the party knew of the right and then abandoned it, either by design or indifference." Knorr, 178 N.J. at 177.

Petco argues Tomaselli's letter describing the check as "full and final payment" cannot constitute a clear and unambiguous waiver of its rights. We disagree, as this overlooks the well-settled principle that intent to waive need not be stated expressly, as long as the circumstances demonstrate that the party deemed to have waived its rights knew of its rights and clearly and unambiguously intended to waive them. Significantly, Petco does not and cannot argue Sedgwick, as Petco's lien administrator, was unaware of its section 40 entitlement to the full proceeds of the third-party settlement. Indeed, it would be unreasonable to assert that Sedgwick, Petco's workers' compensation lien administrator, was unaware of Petco's right to recover reimbursement of workers' compensation benefits to the full extent of the third-party recovery pursuant to section 40. The waiver resulted from Sedgwick's conduct in cashing the check after receiving the letter. By accepting and endorsing the check, Sedgwick clearly and unequivocally conveyed its intent to accept $33,333.33 as full and final payment of any outstanding workers' compensation lien. See Customers Bank v. Reitnour Inv. Props., LP, 453 N.J. Super. 338, 353 (App. Div. 2018) ("In those cases in which a check bears a notation indicating that it

is being tendered in full satisfaction of the disputed debt, we impute to the creditor an intent to be bound by the amount of the check if the creditor deposits the check for collection." (quoting Zeller v. Markson Rosenthal & Co., 299 N.J. Super. 461, 463-64 (App. Div. 1997))).

Petco further argues that because Tomaselli's language does not explicitly reference section 40, the language "any outstanding worker's compensation lien" is ambiguous. We disagree. Petco would not have been entitled to any portion of the third-party proceeds except by virtue of its section 40 lien. An explicit reference to section 40 was unnecessary, as those lien rights are encompassed within the plain meaning of "any outstanding worker's compensation lien." Moreover, the record reveals no other, third-party settlement occurred after Sedgewick agreed to accept one third of the $100,000 from the two settlements.

Petco's contention that its acceptance of the $33,333.33 payment represented settlement of only the accrued lien amount to date, but reserved recovery for any future worker's compensation payments, is belied by the record. Petco was not required to accept payment at the time of the third-party recovery, as its lien had been noticed and perfected. It could have awaited the results of petitioner's trial to determine the amount it would accept. More importantly, Petco's argument is undermined in that it had already paid out an amount well

over the $100,000 Tomaselli received as a third-party recovery, and could have insisted on the full amount of the third-party recovery at the time it instead accepted the payment of $33,333.33.

The JWC's decision is consistent with longstanding workers' compensation lien practices:

> It is common that plaintiffs' counsel request that the adjuster or employer 'compromise' the lien. This is a request that the employer take less than the statute would permit the employer to take in reimbursement . . . . Many a company has lost reimbursement rights by signing a release of lien rights when the compensation case is only half over. If there is a need for a release from the third-party defendant's carrier, the release should not state that there has been a "full satisfaction of lien." It should state that the lien still exists as to future compensation benefits, including but not limited to, permanent disability benefits.
>
> [Geaney's NJ Workers' Comp. Manual § 14.]

Neither Petco nor Sedgwick made any reservation of future lien rights in any communication to Tomaselli. If the $33,333.33 was unacceptable as a final settlement, Sedgwick could have objected rather than accepting the payment and endorsing the check. See Customers Bank, 453 N.J. Super. at 353.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division