F. R. PIDCOCK and R. S. RODDENBERY, Partners Doing Business as PIDCOCK & RODDENBERY, Respondents, v. DOSSA O. WILLIAMS, Doing Business as D. O. WILLIAMS & COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed March 4, 1924.

1. ACCORD AND SATISFACTION: What Constitutes: Offer of Payment of Money. To constitute an accord and satisfaction in law dependent upon the offer of the payment of money, it is necessary that the offer of money be made in full satisfaction of the demand or claim of the creditor and be accompanied by such acts or declarations as amount to a condition that if the money is accepted it is to be in full satisfaction, and be of such character that the creditor is bound to so understand the offer.

2. ————: Compromise and Settlement: Tender: Acceptance: Tender of Check in Payment of Balance Shown by Account, etc.: Not Conclusive. A tender of a check in payment of the "balance" shown by an account, accompanying the tender, to be due to the creditor does not of itself show conclusively that the check was tendered on the condition that it must be accepted in full payment of the creditor's claim.

3. ————: ————: ————: ————: Creditor Receiving Less Than the Amount of Claim: Does Not Conclusively Establish Accord and Satisfaction. The mere fact that a creditor receives less than the amount of his claim, with knowledge that the debtor claims to be indebted to him only to the extent of the payment made, does not conclusively and as a matter of law establish an accord and satisfaction.

4. ————: ————: ————: ————: ————: Evidence: Insufficient As a Matter of Law to Establish Accord and Satisfaction. In an action for the balance due on a shipment of sweet potatoes, evidence that defendant wrote a letter to plaintiff inclosing a check and a statement of account and tendering the check in payment of the balance, as shown by his statement, which check was less than the amount plaintiff claimed to be due, but was accepted, such acceptance did not as a matter of law constitute an accord and satisfaction, where the letter accompanying the check merely stated that the check was sent in payment of the amount that defendant considered due for the potatoes, and as the balance due as

shown by the accompanying statement, and on plaintiff's inquiry as to the application of the check, he ignored the inquiry by saying that he saw no reason for any further settlement.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Charles B. Davis,* Judge.

AFFIRMED.

*Sleater & Slattery* for appellant.

(1) The action of the plaintiff in endorsing and cashing check of defendant dated June 26, 1920, for $817.16 was an accord and satisfaction. Maack v. Schneider, 51 Mo. App. 92; Deutman v. Kilpatrick, 46 Mo. App. 624; Adams v. Helms, 55 Mo. 491; Pollman v. St. Louis, 145 Mo. 651; Perkins v. Headley, 49 Mo. App. 556. (2) The fact that plaintiff endorsed defendant's check to the effect that it was accepted in part payment and that there was a balance due does not prevent the cashing of such check from being an accord and satisfaction. St. Joseph School Board v. Hull, 72 Mo. App. 403; Lightfoot v. Hurd, 113 Mo. App. 612; Halloway v. Creamery Co., 286 Mo. 489; Pollman Coal Co. v. St. Louis, 145 Mo. 651. (3) When the amount of the debt is in good faith disputed the acceptance of a payment made by one party as in full of such claim is an accord and satisfaction even though he protests at the time that more was due. Halloway v. Creamery Co., 286 Mo. 489; Lightfoot v. Hurd, 113 Mo. App. 612. (4) Where a sum of money is tendered in satisfaction of the claim and the tender is accompanied with such acts and declarations as amount to a condition that the party to whom it is offered is bound to understand therefrom that if he takes it subject to such conditions an acceptance of the offer constitutes an accord and satisfaction, it is not essential that the debtor declare in terms, in making a tender, that it is in full payment of the claim. McGregor v. Ward, 188 Mo. 611; Pollman v. St. Louis, 145 Mo. 651; Bahrenberg v. Con-

rad Schoppe, 128 Mo. App. 526; Cornelius v. Rosen, 111 Mo App. 619.

*Felix Cornitius* for respondents.

(1)   To constitute a valid accord and satisfaction, it is essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand, and that such intention shall be made known to the creditor in some unmistakable manner. Vinson v. Jordan, 167 Mo. App. 201; Matheny v. Eldorado, 82 Kansas 720, 28 L. R. A. (N. S.) 980.   (2)   It is essential that the creditor shall have accepted the tender with the intention that it should operate as a satisfaction. Shaw v. Burton, 5 Mo. 478; Wilkerson v. Bruce, 37 Mo. App. 156; Ga. R. Co. v. Olds, 77 Ga. 673; Edwards Bottling Works v. Jarnigan, 11 Ga. App. 162; Beattie Mfg. Co. v. Heinz, 120 Mo. App. 465.   (3)   The mere fact that the creditor receives less than the amount of his claim, with knowledge that the debtor claims to be indebted to him only to the extent of the payment made, does not necessarily establish an accord and satisfaction.   Perkins v. Headley, 47 Mo. App. 556.   (4)   Where a sum of money is tendered in satisfaction of a claim and the tender is accompanied with such acts and declarations as to amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that if he takes it subject to such conditions he accepts it in full of all claims, then an acceptance of the money offered constitutes an accord and satisfaction.   McGregor v. Ward, 188 Mo. 611; Pollman v. St. Louis, 145 Mo. 651; Bahrenburg v. Conrad Schopp, 128 Mo. App. 526; Heitland v. Culver, 181 Mo. App. 697; Redman v. Atlanta, 129 Ga. 133.

BRUERE, C.—This action originated with a statement filed before a justice of the peace of the city of St. Louis, on the 1st day of April, 1921, which statement in part is as follows:

May 8, 1920. 648 crates "Georgia Sweets"
at $2.00 per crate ....................$1296.00
Car ACL 36400
By check June 26th .....................$ 817.16
Balance due .........................$ 478.84
and interest from May 12, 1920, until paid.

The cause was appealed to the circuit court of the city of St. Louis, where the cause was tried by the court, the parties having duly waived a trial by jury, and a judgment was entered for the plaintiffs, and defendant appeals.

The evidence disclosed that the plaintiffs were engaged at Moultrie, Georgia, in the business of selling sweet potatoes and that the defendant was a wholesale fruit and produce dealer in the city of St. Louis, Mo. Both parties were subscribers to the Produce Reporter, which contained a set of standard rules and regulations adopted by the Trade and the Produce Reporter. According to these standard rules and regulations, "immediate shipment" shall permit of twenty-four hours longer time than "today's shipment" and "today's shipment" means loaded and billed for loading point in time to start on schedule provided by transportation company before midnight of the day order is received.

The evidence further shows that on May 5, 1920, the defendant wired the plaintiffs as follows:

"Wire lowest car fancy yams immediate shipment."

On the same day the plaintiffs answered by wire:

"Answering two dollars very best now stock very low can also book one car next week same price."

On the same day, and at 5:15 p. m., defendant wired the plaintiffs:

"CLF stock fancy well-packed ship car immediately one next week."

This last telegram was received at Moultrie, Georgia, and was telephoned to one of the plaintiffs at his residence, after business hours, at 7:15 p. m., on May 5, 1920. On the morning of May 6, 1920, the plaintiffs gave an order to the Georgia Northern Railway Company, at its

Moultrie office, to place a railroad car at plaintiff's warehouse at Boston, Georgia, for the loading of the sweet potatoes.

It further appears in evidence that the car was placed as ordered about 4 p. m., on May 6, 1920; and that, according to the schedule of the trains of said railroad, this was the earliest hour at which the railroad could have placed the car after it was ordered; that in loading a car of sweet potatoes it is necessary to grade and repack the potatoes in crates, and that this work and the loading of the potatoes in the car takes from a day to a day and a half; that the plaintiffs loaded and delivered the car to the Georgia Northern Railway Company for transportation to the defendant, at St. Louis, Mo., at 6 o'clock p. m., the 7th day of May, 1920; and that said car left Boston, Georgia, at 8:30 o'clock a. m., the 8th day of May, 1920.

On May 8, 1920, the plaintiffs wired the defendant: "ACL three six four hundred sweets rolling. Have five cars unsold now. What time next week shall we ship and do you want more than one?"

Whereupon, on the same day, May 8, 1920, the defendant wired the plaintiffs as follows:

Confirmation just received our wire fifth we purchased elsewhere cancel second car will do best possible rolling car."

To which defendant replied on the same day, May 8th:

"Your cancellation received and accepted. No trouble sell all have and more prices asking. Your order fifth needed no confirmation as made open offer you accepted. Car rolling yours expect acceptance our draft on arrival. Stock first class and fully up to grade and pack.

After the sending of the last-mentioned telegram there followed an exchange of correspondence between the parties in which the defendant claimed that his order of May 5, 1920, should have been confirmed by the plaintiffs not later than May 6, 1920, while the plaintiffs in-

sisted that the order required no confirmation and that the car of potatoes belonged to the defendant.

On May 15, 1920, the defendant wired the plaintiffs:

"ACL three six four hundred arrived shall we handle best advantage will try hard net you two dollars."

On the same day, May 15, 1920, plaintiffs replied by wire:

"Potatoes sold you on your order fob loading point your potatoes expect you honor draft."

No further correspondence passed between the parties until June 15, 1920, when the plaintiffs wired the defendant:

"Your draft for ACL three six four hundred ca sweets twelve hundred ninety-six dollars just returned unpaid wire explanation."

On the same day, June 15, 1920, defendant replied by wire:

"Will send check direct last car sweets."

The plaintiffs returned the draft for collection, and the same was again returned unpaid on June 25, 1920.

On said last named date the plaintiffs wired the defendant:

"Bank notifies you did not honor our draft. You wired on fifteenth you would send check for last car potatoes. You have not done so and turn down our draft. Do you want us to take other action in this matter to get our money."

On June 26, 1920, defendant replied by wire:

"Check and sales last car sweets in mail."

On the same day, June 26, 1920, the defendant wrote the plaintiffs the following letter:

"Please find enclosed check, and sales of last car of sweet potatoes. Please pardon delay in getting out these sales, as the writer has been very busy, and up to the present time could not find sufficient time to check up this matter. Reviewing this transaction, on May 5 we wired you as follows: 'Wire lowest car fancy yams immediate shipment.' You replied on the same day as follows: '$2.00 very best now stock very low. Can also book one

car for next week same price.' We replied on the same day as follows: 'Wire if fancy well packed. Ship car immediate one next week.'

''After this last wire we heard nothing from you until the afternoon of May 8, giving us car No. ACL 36400, stating that you were shipping this car, and that you would ship another car the following week. We wired you as follows: 'Confirmation just received your wire 5th. We purchased elsewhere, we are cancelling 2nd car. Will do best possible rolling car. In the first place, we purchased this car on May 5th, for immediate shipment, which could not have meant shipment 3 days afterwards. As shown by bill of lading which is dated May 8. In our wire of May 8 we advised you that we would handle the car which you had rolling, which we considered a favor on our part, as you had not complied with your contract. We also wrote you on May 8 stating that we would do the best we possibly could with the car which you had rolling. In the second place this car of sweet potatoes was not fancy or well packed. Some of the stock was overly large and rough, and many of the boxes were only partly filled. As we heard nothing from you in the contrary, we unloaded the car, per notice to you and did the very best we possibly could and think that our sales will show we realized nearly the amount which you billed us the car for. We trust therefore, that you will understand that it was merely for your interest that we handled the car, as we did, as you would not have received near as much money had you turned it over to someone else after leaving it on track another day or so.

''Hoping this letter will explain matters satisfactory, we are

Yours very truly,<br>D. O. Williams & Co.''

Inclosed in this letter was a check for eight hundred and seventeen dollars and sixteen cents, payable to the order of R. S. Roddenbery, and also a statement which is as follows:

Pidcock & Roddenbery v. D. O. Williams & Co.

"(D. O. Williams & Co. Billhead.)

Sales No. 10702        Car ACL 36400

Received June 15

Account of R. S. Roddenbery, Moultrie, Ga.

St. Louis, Mo., June 25/20.

| | | | |
|---|---|---|---|
| 106 Boxes | @ | $2.25 | $238.50 |
| 133 Boxes | @ | $2.00 | $226.00 |
| 382 Boxes | @ | $1.75 | $668.50 |

27 Boxes lost filling up and repacking

$1173.00

Charges

| Express | Storage | | |
|---|---|---|---|
| Freight $165.50 | Drayage | 464.80 | |
| Demurrage $8.24 | Commission | $117.30 | $355.84 |

Net Proceeds $817.16

Yours very truly,

D. O. WILLIAMS & Co.

Per ——————————"

In reply to said letter the plaintiffs wired defendant: "Your letter with account sales and check received we will not accept same in settlement. All our wires to you reference this car was it was sold f. o. b. loading point. We wired you in reply your wire on arrival of car we did not relinquish our claim that car was yours and you took same on your own responsibility and expect our money in full for car . . . Unless you wire you will pay in full shall turn over to Produce Reporter all correspondence for collection. . . . "

On June 29, 1920, the defendant wrote plaintiffs, saying, among others:

"We have your wire of today, in which you acknowledge receipt of account sales. We are sorry indeed that you take the attitude you do regarding this matter. As to settlement, it will be perfectly satisfactory for us if you send all papers to the Produce Reporter Co., and let them collect same. Regarding your wire of the 15th, we wish that you would please read same over again, as

our copy reads: "Will send check direct last car of sweets. . . ."

On July 2, 1920, the plaintiffs replied saying, among others:

"We wish to only reply to the latter part of your letter where you ask that we read your wire of the 15th June. We have done so and find the following, no more and no other words: 'Will send check direct last car sweets.' You did not send it. That was a promise to pay for the car. Nothing said about sending account sales and check less than invoice price."

On July 10, 1920, defendant wrote plaintiffs:

"We have explained our position fully regarding this matter, and see no reason why you should not consider the transaction closed. . . ."

On July 12, 1920, the plaintiffs wired defendant as follows:

"Your letter tenth received. Are you willing us to use check you sent apply on car and leave our differences to disinterested parties settle. Wire answer."

To this wire defendant on July 14, 1920, wrote plaintiffs as follows:

"We have your wire of the 12, relative to disposition of the last car of sweets. Replying wish to say we feel as though we have acted fairly in this matter, and see no reason for any further settlement."

No further correspondence was had between the parties. The plaintiffs endorsed defendant's check for eight hundred and seventeen dollars and sixteen cents, as follows:

"Accepted in part payment car sweet potatoes, ACL 36400; balance due, $478.84. R. S. Roddenbery. Pidcock & Roddenbery, by R. S. Roddenbery."

The said check was also cashed by the plaintiffs on July 17, 1920. Thereafter, on April 1, 1921, this suit was instituted.

The only error assigned by counsel for the defendant is that the trial court erred in not finding that the cash-

ing of defendant's check for eight hundred and seventeen. dollars and sixteen cents, dated June 26, 1920, was, under the evidence adduced, an accord and satisfaction as, a matter of law; and that the plaintiffs are barred from. maintaining a suit for any balance due them.

It is a well-settled rule that "to constitute an accord and satisfaction in law dependent upon the offer of the; payment of money, it is necessary that the offer of money be made in full satisfaction of the demand or claim of the creditor and be accompanied by such acts or declarations as amount to a condition that if the money is accepted it is to be in full satisfaction, and be of such a character that the creditor is bound to so understand the offer." [1 R. C. L., p. 195.]

Applying the above rule to the facts in this case, the question to be decided in the instant case is—does the evidence conclusively show that the tender of the check, which was inclosed in defendant's letter of June 26, 1920, was accompanied by such acts and declarations that the plaintiffs must have known that the tender was on the condition that it be accepted in full payment of plaintiffs claim.

It is argued, by counsel for the defendant, that the letter and "account sales," accompanying the check, and defendant's letter, dated July 26, 1920, conclusively show that the check was tendered by the defendant on the condition that it be accepted in full payment of plaintiffs claim, and that the plaintiffs must be held to have so accepted it.

We cannot concur in this view. The defendant in said letter did not require acceptance of the check in full payment of plaintiffs' claim as a condition precedent to its acceptance. There is nothing in the language used which can be reasonably construed as a notification to the plaintiffs that the check was sent them upon the condition that if they accepted and cashed it it would be in satisfaction of their claim. The letter contains no condition annexed to the offer of the check. The letter

simply states that defendant sold the potatoes for plaintiffs; and that in accordance with this view, the check was sent in payment of the amount that defendant considered as due plaintiffs for the potatoes, and as the balance due them as shown by the "account sales."

A simple tender of a check in payment of the "balance" shown by an account, accompanying the tender, to be due to the creditor does not of itself show conclusively that the check was tendered on the condition that it must be accepted in full payment of the creditor's claim. [Bahrenburg v. Fruit Co., 128 Mo. App. 526, 107 S. W. 440; 1 Corpus Juris, 559; 1 R. C. L. 195.] Neither does the mere fact that the creditor receives less than the amount of his claim, with knowledge that the debtor claims to be indebted to him only to the extent of the payment made, conclusively and as a matter of law establish an accord and satisfaction. [Perkins v. Headley, 49 Mo. App. 556.]

Nor can it be said, as a matter of law, that defendant's letter of July 14, 1920, which was written in reply to plaintiffs' telegram of July 12, 1920, is a notification to the plaintiffs that the check was offered upon the condition that if plaintiffs took it they did so in full payment of their claim.

In their telegram of July 12, 1920, the plaintiffs, in order that the defendant could clearly state his position as to the tender of the check, inquired of him whether he was willing that the check be applied on the account and the difference left for settlement to disinterested parties. It thus became defendant's duty, if he intended that the acceptance of the check should operate as a satisfaction of plaintiffs' claim, to inform the plaintiffs, in unequivocal language, that he was unwilling that the check be applied on the account and that if plaintiffs took it they must do so in full settlement of the account. This he did not do. He ignored the inquiry, as to the application of the check, and answered the inquiry, as to an arbitration of the balance in dispute, by saying that he saw no reason for any further settlement. The letter in

effect states that the check is for the correct balance and that the defendant will not pay more. ''It is one thing to inform a creditor when sending a check that the debtor will not pay more and a very different thing to advise him that the check is sent upon condition that if he accepts it he will do so in full settlement of the account. [Am. F. & M. Co. v. Lindsay Chair Co., 129 Ill. App. 548.]

We hold that the evidence adduced did not conclusively and as a matter of law establish an accord and satisfaction. [Perkins v. Hadley, 49 Mo. App. 562; St. Joseph School Board v. Hull, 72 Mo. App. 403, 1. c. 409; Bahrenburg v. Fruit Co., 128 Mo. App. 128, 107 S. W. 440; Heitland v. Culver, 181 Mo. App. 697, 164 S. W. 708; Heller v. McGilvray, 223 S. W. 971; Hawthorn Lumber Co. v. Lee Jordan Lumber Co., 167 Mo. App. 204, 151 S. W. 199; Tompkins v. Hill, 145 Mass. 380; Pottlitzer v. Wesson et al., 8 Ind. App. 473; Harrison v. Henderson, 67 Kan. 194; Kingsville Preserving Co. v. August Frank et al., 87 Ill. App. 586; Peter Lapp v. William Smith, 83 Ill. App. 203; Nossoiy v. Tomlinson, 65 Hunn, 491; Am. F. & M. Co. v. Lindsay Chair Co., 129 Ill. App. 548; 1 Corpus Juris, 523, 529; 1 R. C. L., 177, 194, 195.]

It results that the judgment of the circuit court of the city of St. Louis should be affirmed. The Commissioner so recommends.

PER CURIAM:—The opinion of BRUERE, C., is adopted as the opinion of the court. The judgment of the circuit court of the city of St. Louis is accordingly affirmed. *Allen, P. J.,* and *Becker* and *Daues, JJ.,* concur.